Chief Justice Bibb
delivered the Opinion of the Court.
In September, 1805, John Porter and William Markham, executed their covenant to Wm. L. Richards, to pay him five hundred and twenty-five dollars, in horses, on or before the first day of September ensuing.
In November, 1808, Wm. Warren, administrator of- Wm. L. Richards deceased, sued the obligors in this covenant; the writ was executed at November term, 1809; the suit was abated as to Porter by his death, and continued as to Markham, and a scire fa? cias ordered against the representatives of Porter.
In January, 1810, the scire facias issued against James Hickman, the administrator, with the will annexed, of Porter. At August term, 1810, of the Bourbon circuit court, the administrator. Jas. Hick *2 man, pleaded covenant performed, with an agreement that if the issue was found for plaintiff, that judgment should be levied of the assets of the testator quando acciderint. The issue was found for plaintiff and judgment, entered according to the agreement, for five hundred and twenty-five dollars, the damages assessed:by the jury against the administrator. What has been done with the action against Markham does not appear.
íDeeds of gift Torterto his ■children.
■Porter’s last will.
Administra-on'refasinC to give counter security in his tionbonda' and ordered to deliver the testate over to the sheriff.
Bill by Rich-istratoi^aJ1" leging tiie administrator Sad not ass^ent and graying7 the slaves giren W Por-iffeíüne to migaba611 subjected-.
*2 In 1809, Porter made a deed of gift to his son, Martin Porter, for certain slaves, and 1806, a like deed for certain other slaves to his daughter. These deeds were duly acknowledged and recorded in the office-of the Bourbon circuit court.
Porter, by his will, notices these deeds of gift and confirms them; he authorises and directs his executors or administrators to sell several tracts of land in Virginia, and the slaves in that state, and also several tracts of land in this state, for the purpose of paying his debts, and the surplus to be divided amongst his children; certain slaves in this state also, are directed to be hired out, the hire applied to payment of his debts, and the surplus, after educating his children, to be divided amongst them; certain other lands are set apart for the support of his wife and children, until they arrive at full age, and then they are devised specifically to his sons; which will was recorded in December, 1809.
In 181d, at the June term of the county court of Bourbon, James Hickman, the administrator, with will annexed of John Porter, having been summoned at the instance of his sureties, to give counter security, and failing to appear, was displaced by the court) and the order made that the said James Hickman deliver'Over the estate in his hands, as administrator, to the sheriff of the county, to be administered,
In 1821, Warren the administrator of Richards, exhibited a bill, shewing the record of the judgment obfoif^d against Porter’s administrator, with annex&d, alleging that James Hickman had settled his accounts, and that all the assets which came to his hands had, been exhausted by other *3 creditors, leaving this -debt unpaid, that assets to pay this judgment had not come to said James Hickman’s hands at' any time since the rendition of said judgment; that John L.. Hickman, who was sheriff at the time of displacing James Hickman, the administrator, had made no. settlement of his accounts, and that the complainant believed no. assets had 'come to the hands of the said sheriff; the- assets which were in the hands of James having been ex-liausted in payment of debts by the said James.,
Answer of and devisees'6 alleging the ’ covenant ro-g^bcen'sat’' isfiedlongbe-fore the judgment against the adminis-tratoT*c--
The bill charges the deeds of gift made, by Porter to his children to be fraudulent.
The- will of Porter is exhibited; the widow had' renounced, the provision for her by the will, and liad been endowed of the lands; but that she had received no part of the slaves and personal estate.
The children of Porter, as his heirs and devisees* together with James L. Hickman, (former- sheriff,) are made defendants, and tne prayer of the bill is, that unless the children sliall'prove that assets have come to the hands of said James L. Hickman sufficient to-sat'isfy the judgment;.that then-the-slaves so given by, those deeds, and the lands and houses and lots devised to the children of- Porter, may be subjected to sale, to satisfy the judgment.
Feemster and Lucretia his wife, Lewellin Porter and the infants John Porter and Austin, by their guardian,, resist the claim of the- complainant throughout, and exhibit a'receipt by Wm. L. Richards, of the 4th January, 1806, for the balance in full; on the back of the covenant is endorsed- a credit for 150 dollars. "
, This receipt is proved py testimony;shewing that the- subscribing witness left the state-many years ago; that it is the hand writing of the subscribing witness, as also of Richards — John Todd' wasprer sent at a settlement between Porter and Richards; and saw the receipt, executed by the said Richards and attested by the subscribing witness, and understood from both parties that it was paid in horses and a tavern account, Richards, not having the bond, gave the receipt,, and promised to destroy the bond’ as .soon as he. went home.
Evidence of the satisfaction of the covenant.
Judgment against the'ad-ministralor is not proof of the demand, in a suit against the do-heoof slaves, ™ ® Ji1®^ intestate, but the dofend-Covenant before recov-erod satisfiedby the intestate,
*4 T.he defendants also allege that the judment at law was had by fraud and collusion between the plaintiff and the administrator, Hickman.
They question the jurisdiction of the court, because there is an adequate remedy at law.
They deny the deeds of gift were fraudulent, and insist that Porter’s situation and circumstances justified such gifts.
They insist that John L. Hickman is not the administrator, and never was; that by the statute the suit should he joint against the administrator and heirs, and that Hickman’s office of sheriff had ex-, pired before the institution of the suit.
By an amended answer they deny that James Hickman was duly qualified as administrator, with the will annexed, and say the judgment against him, is void.
John L. Hickman says that not one cent of property or assets ever came to his hands as sheriff under his appointment.
The suit upon the death of Warren, the administrator, was revived by the administrator de bonis non, and upon hearing the bill was dismissed with costs ; from which the complainant has appealed.
The evidence of satisfaction by the obligor, Porter, in his lifetime, is full, clear and unequivocally established by the written receipt of the obligee, proved so clearly and fully, by a witness present at the settlement and subscription and attestation of that receipt, accounting for the non-production of the deposition of the attesting witness, that it supersedes all other questions in tills cause, unless the complainant can escape from the effect of this evidence.
To do this it is argued that the judgment against the administrator of Porter is conclusive upon the children, heirs and devisees of Porter.
Secondly: If not conclusive against the heirs and devisees claiming the real estate sought to be subjected to the judgment, it is conclusive as to the slaves which are the subjects of the deeds of gift.
*5 To understand more distinctly ibe position assumed by this argument for the appellants, it must be remembered that they come into a court of equity ashing its aid to enforce a judgment at law against persons, not parties to that judgment; who were infants when that judgment was rendered, all of them then infants, some of them now infants. These defendants now before the court, and who are to be affected by the relief prayed, claim no part of the property sought to be affected by or under the administrator who suffered the judgment against him for assets quanclo acciderint; nor do they claim even by or under the assent or courtesy of that administrator. They claim the slaves by deeds from the testator in his lifetime. The bill charges and asserts as the foundation for the application to the court, that all the assets which ever came to the hands of the administrator with the will annexed, have been fully administered, and one object of the bill is to set aside these deeds of gift made by the testator and ancestor as fraudulent.
There is then no privity whatever between the administrator, against whom the judgment was obtained, and the present defendants as heirs and devisees; that administrator, when sued, was in no degree the depository, stake holder, trustee or fiduciary of the title and interests of the children of Porter in respect of the property now asked to be subjected to this decree. The case of Porter’s administrators at the suit of Mason’s devisees, 1 Munford 445, is decisive of this question. And the case of Ewings, heirs vs. Handley’s ex’ors. 4 Litt. 847, decides that the administrator never could have recovered, nor obtained by law the slaves included in the deeds of gift. Consequently, as to those slaves, the administrator was not the fiduciary ór representative of the rights and interests of the children. They held and claimed adversely to him, and were beyond his control as to such slaves. As he could not control them directly, it seems to follow, that indirectly he cannot conclude the title of the children by suffering a judgment; but that a judgment against the administrator is not conclusive against the heirs, even as to their interests in slaves and chattels, is admitted in. *6 the same case, 355. All the defendants ask in tills case is, that the judgment shall not be conclusive. The onus probandi of proving it unjust, because of satisfaction by Porter, the obligor, to the obligfee, is taken by them.
Equity will not of coufse lend its aid to effect a judgment at law, but will withhold it when the defendants might have relief against the judgment on their bill, or injustice ■\fcould be done by enforcing it.
But to the consideration that the children were-not parties nor privies, these farther considerations are to be added: the children were,- at the time of the judgment, all infants; not being parties nor privies,, and infants, they had neither right nor capacity to defend, nor protect themselves from the consequences of an unjust judgment against the administrator, To give aid in effecting judgments at law; the chancellor does not act as a matter of course — -• he interferes only where á proper case is made out —he acts only where equity requires it. He will not, therefore, lend his aid to the defective powers of a court of common law, when he sees manifest injustice is to result; nor where he would on behalf of the defendants, relieve against the judgment upon bill filed. In this case the children were all infants, neither parties nor privies to the judgment; they now show the satisfaction of the demand by their ancestor in his lifetime, and the record relied on by the complainant, shews that the judgment against the administrator was rendered upon an a-greemént by the plaintiff before the trial, that the judgment, if for plaintiff, should be taken only ar gainst assets quando acciderint. This agreement was calculated to affect the interests of the children, if usad as nów asserted, and was evidently designed to slacken the defence of the administrator: all accountability for assets before that time was yielded to him: only future assets were to be bound by the judgment. This bill now states that the former administrator, James Hickman, had settled his accounts and had fully administered; of that there is no proof; he is not a party; no account is asked from him, no scire facias hasever issued to have an account of assets. The other obligor, Markham, was not proceeded against; there was no account of the suit as to him; he is no-defendant here; and throughout, this demand upon the covenant, seems to have been conducted so as to slacken and prevent defence; *7 and conducted apparently to be used against these children alone. In denying to the judgment at law the conclusive effect contended for, the circuit court did not err, and the proof of satisfaction to the ob-ligee himself, long before his death, and before suit by his administrator is clear.
Decree!
Thornton, for appellant; Feemster, for appellees--
This view of‘the case renders it unnecessary to notice any of the other defences insisted on by the appellees, or growing out of the proceedings.
It is the opinion of this court, that the persons, property and rights of the children of John Porter deceased, were in no wise bound as parties or privies, nor as represented in the suit against the administrator, with the will annexed, so far as respects the property now sought to be subjected to that judgment; that under the circumstances and attitude in which they stood as defendants to this bill, they were at full liberty to question the justice of the judgment against the administrator, and that they have proved that the covenant on which the action and judgment at law was founded, had been satisfied by their ancestor, in his lifetime, to the obligee, Wm. L. Richards, long before the suit by his administrator, against James Hickman, as administrator, with the will annexed, of said John Porter.
It is, therefore, ordered and decreed, that the decree of the circuit court be affirmed, with costs.